[No. F060144. Fifth Dist. June 2, 2011.]

JOY HALL-VILLAREAL, Plaintiff and Respondent, v.
CITY OF FRESNO et al., Defendants and Appellants.

**COUNSEL**

James Sanchez, City Attorney, and Tina R. Griffin, Deputy City Attorney, for Defendants and Appellants.

Law Offices of Bennett & Sharpe, Barry J. Bennett, Thomas M. Sharpe, Elaine M. Yama, Heather N. Phillips and Katwyn T. DeLaRosa for Plaintiff and Respondent.

**OPINION**

**WISEMAN, J.**—After she was fired from her job with the City of Fresno, Joy Hall-Villareal requested an appeal hearing to challenge the termination. The Civil Service Board (CSB) rejected her appeal as untimely. She then petitioned the trial court for a writ of mandate ordering the City of Fresno, the CSB, and Juanita Chavez, acting secretary to the CSB (collectively the City), to conduct a hearing on the merits of the termination decision. The trial court granted the petition, and the City appealed.

We hold that, contrary to the City's contention, Hall-Villareal's application for retirement benefits did not divest the CSB of jurisdiction to hear her appeal. We also hold that, since this case involves the fundamental vested right to continued employment, due process requires that a good cause exception for late-filed appeals be read into the administrative procedures. We affirm the judgment. Hall-Villareal requests attorney's fees, but we decline to award them.

## FACTUAL AND PROCEDURAL HISTORIES

Hall-Villareal worked for the City of Fresno for 21 years. Her most recent position was senior administrative clerk with the Fresno Police Department.

On February 10, 2009, she was given a notice of proposed termination. About two weeks later, she attended a *Skelly* meeting with her union representative. (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].) On April 6, 2009, Hall-Villareal was served an "Order of Termination." The grounds for the termination were accessing files for personal interest and making false statements to a supervisor in violation of provisions of the Fresno Police Manual. Two days later, she submitted an application for retirement benefits through the City of Fresno Retirement System.[1]

Hall-Villareal then contacted the Fresno City Employees Association to determine whether they would represent her in an appeal of the termination. After several days passed without a response, she contacted the law firm of Bennett & Sharpe, her current counsel. She made an appointment with Attorney Barry Bennett for April 21, 2009. On the day of the appointment, however, a secretary from the law firm called and told her that no attorney would be available. An appointment was rescheduled for the next day.

On April 22, 2009, she met with Bennett and filed an appeal the same day. By letter dated April 23, 2009, Chavez informed Hall-Villareal that her appeal had been rejected as untimely. She explained that Hall-Villareal had 15 calendar days from the service of the order of termination to demand an appeal. The order was served on April 6, 2009, so the deadline to appeal was April 21, 2009. Her appeal was one day late.

On November 12, 2009, Hall-Villareal filed a petition for writ of mandate pursuant to Code of Civil Procedure sections 1094.5 and 1085 seeking a court order directing the City to grant her a hearing on the merits of her termination. Hall-Villareal asserted that she had a right under Fresno Munici-pal Code (FMC) section 3-283 to a hearing. She argued that there was good cause for her brief delay in filing her appeal, and there was no prejudice to the employer. The City responded that Hall-Villareal's application for retire-ment benefits divested the CSB of jurisdiction to hear her appeal on the termination decision. It also argued that CSB has no jurisdiction to hear untimely appeals, and there is no "good cause" exception for hearing untimely appeals.

On February 4, 2010, the court granted the petition and issued an order "directing Respondents and each of them to perform their legal duties by

---

[1] At the time she filed the petition for writ of mandate, Hall-Villareal was 60 years old. She had no source of income other than her salary when she worked for the City of Fresno. She applied for retirement benefits to have some form of income and intended to apply for reinstatement from retirement if her appeal was successful. Her retirement was effective April 8, 2009, and she received her first retirement benefit payment on April 30, 2009.

granting Petitioner a hearing on the merits of her dismissal, as requested by Petitioner." The parties were to bear their own costs and fees.

## DISCUSSION

Since this case involves the fundamental vested right to continued employment, the trial court was required to exercise independent judgment in reviewing the administrative decision. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816–817, fn. 8 [85 Cal.Rptr.2d 696, 977 P.2d 693]; *Farmer v. City of Inglewood* (1982) 134 Cal.App.3d 130, 136 [185 Cal.Rptr. 9] [reviewing trial court's order compelling city to conduct hearing on its employment decision].) Ordinarily, we review the trial court's ruling for substantial evidence (*Fukuda, supra,* at p. 824), but we review de novo questions of law such as interpretation of city charters and municipal codes. (*Stolman v. City of Los Angeles* (2003) 114 Cal.App.4th 916, 928 [8 Cal.Rptr.3d 178].)

The City urges us to defer to its interpretation of the rules governing appeals to the CSB. Although the City's interpretation is "one of several interpretative tools that may be helpful," we must independently interpret the local rules at issue. (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 322 [87 Cal.Rptr.2d 423, 981 P.2d 52] [where agency interpretation is neither formally adopted regulation nor long-standing administrative construction, reviewing court "need not defer to any administrative understanding of the meaning of th[e] provisions"].)

## I. *Hall-Villareal's retirement*

The City first contends that Hall-Villareal's retirement divested the CSB of its jurisdiction to hear her appeal. This contention is not supported by the city charter or municipal code.

██ Fresno is a charter city. (*Howard Jarvis Taxpayers Assn. v. City of Fresno* (2005) 127 Cal.App.4th 914, 917 [26 Cal.Rptr.3d 153].) "A civil service commission created by charter has only the special and limited jurisdiction expressly authorized by the charter. [Citation.]" (*Hunter v. Los Angeles County Civil Service Com.* (2002) 102 Cal.App.4th 191, 194–195 [124 Cal.Rptr.2d 924].) Under the Fresno City Charter, the CSB "shall have the power and duty to," among other things, "[c]onduct hearings as provided in Section 1002 relative to the suspension, demotion, and removal of any person in the City employment . . . ." (Fresno City Charter (Charter), art. IX, § 909, subd. (c).) Section 1002 of the Charter provides, in part: "An officer or employee suspended, demoted, or removed shall be given in writing the reasons for his suspension, demotion, or removal. He shall be allowed a reasonable time for answering the same and may demand a public hearing

upon the charges before the Civil Service Board, such hearing to be held in accordance with procedures established therefor." (Charter, art. X, § 1002.)

Section 3-282 of the FMC provides:

"(a) The appointing officer, subject to the approval of the Chief Administrative Officer and the provisions of the Charter, may remove any permanent employee under his jurisdiction for any cause provided in this article and, within ten calendar days thereafter, he shall file with the Board an order of removal, stating the cause or causes on which the order is based. Within such period of ten calendar days, the removed person shall be served personally with a copy of the order of removal; provided, that if he cannot with reasonable diligence be found, then a copy thereof shall be mailed within such period to his last known address. Such mailing shall be deemed to be equivalent to personal service. Proof of such service shall be filed with the Board.

"(b) *The person so served may file with the Board, within fifteen calendar days of the service upon him of an order of removal, a written answer to the allegations and charges in such order and a demand for an appeal hearing.* The written answer shall specify the allegations in the order which are disputed and shall contain denials thereof or contrary allegations, and if the extent or degree of disciplinary action is disputed, the reasons for such dispute. The Director may provide a standard answer form, which, upon approval of its use by the Board, shall be used by the appellant. If, in the opinion of the Secretary of the Board, an appeal fails to comply substantially with the requirements of this subsection, the Secretary may give written notice of such insufficiency to the appellant at any time within five calendar days after the appeal is presented, stating with particularity the defects or omissions therein. Failure of the appellant to file an amended appeal within five calendar days of the date of personal service or within ten calendar days of mailing of such notice of insufficiency shall constitute a waiver of the right of appeal or the right to challenge any portion of the order, as the Secretary shall designate in the notice. The Secretary of the Board shall immediately serve one copy of any appeal on the appointing officer. The Board may adopt rules and regulations designed to clarify, simplify, and limit the issues before the Board. A failure to timely file such an answer and demand shall terminate the right to a hearing and the order shall be deemed final. Pending any hearing for reinstatement, the removed person shall receive no compensation." (Italics added.)

■ FMC section 3-283 provides an alternate appeal procedure whereby an employee challenging removal may demand a hearing before a hearing officer rather than before the CSB. The hearing officer conducts a hearing and

files findings of fact and a recommendation to the CSB, which then issues a final written decision on the matter. (FMC § 3-283, subd. (a).) Hall-Villareal pursued her appeal through this alternate procedure.

 Hall-Villareal was removed from her position as senior administrative clerk. She was served an order of removal (called an "Order of Termination") pursuant to FMC section 3-282, subdivision (a). Under section 1002 of the Charter and FMC sections 3-282 and 3-283, she had the right to demand a hearing before the CSB or a hearing officer. Under FMC section 3-283, a hearing officer was authorized to conduct a hearing, and the CSB had authority to review the hearing officer's findings and recommendation and issue a decision. Moreover, under section 909 of the Charter, the CSB had the power and *duty* to decide the appeal after a hearing was demanded. In sum, under the Charter and FMC, after Hall-Villareal was served the order of termination, the CSB had jurisdiction to decide her appeal of the termination decision, either by conducting a hearing or reviewing the findings and recommendation of a hearing officer.

The City contends, however, that Hall-Villareal's retirement had the effect of divesting the CSB of its jurisdiction to hear her appeal. Its argument relies on *County of Los Angeles Dept. of Health Services v. Civil Service Com. of County of Los Angeles* (2009) 180 Cal.App.4th 391 [102 Cal.Rptr.3d 684] (*County of Los Angeles*) and *Zuniga v. Los Angeles County Civil Service Com.* (2006) 137 Cal.App.4th 1255 [40 Cal.Rptr.3d 863] (*Zuniga*).

In *Zuniga, supra,* 137 Cal.App.4th at page 1257, Jesse Zuniga, a deputy sheriff with Los Angeles County, was charged with theft. The county suspended him without pay pending the outcome of the criminal case. (*Ibid.*) Zuniga requested a hearing with the Los Angeles County Civil Service Commission to challenge the suspension. (*Ibid.*) Ten months after requesting a hearing but before a hearing was conducted, Zuniga retired from the sheriff's department. (*Ibid.*) The commission later conducted a hearing and sustained the suspension. (*Id.* at p. 1258.) Zuniga petitioned for a writ of administrative mandate, and the trial court denied the petition in a decision upholding the department's suspension decision. (*Ibid.*) On appeal, the appellate court concluded that Zuniga's petition failed not on the merits of the suspension decision, but because "the Commission lacked jurisdiction to adjudicate Zuniga's claim after he resigned from the Department . . . ." (*Ibid.*)

The *Zuniga* court found that there was "no provision in the charter granting the Commission authority to hear a wage claim brought by a former civil servant." (*Zuniga, supra,* 137 Cal.App.4th at p. 1259.) The court observed that the commission does have jurisdiction over former employees in certain limited circumstances, and, in particular, a discharged employee has a right to

request a hearing before the commission. (*Ibid.*) Zuniga, however, was not discharged; rather, by retiring, he voluntarily resigned. (*Id.* at p. 1260.) The court concluded: "There is no provision in the charter or Civil Service Rules giving the Commission authority over an employee who voluntarily re-signs. . . . Without an express grant of such jurisdiction, the Commission lacked authority to investigate the charges and award backpay to Zuniga." (*Ibid.*)

In *County of Los Angeles, supra,* 180 Cal.App.4th at page 394, Margaret Latham, a staff nurse with the Los Angeles County Department of Health Services, was suspended without pay and later given notice of the depart-ment's intent to discharge her. She filed an appeal with the Civil Service Commission, challenging both the suspension and the discharge. (*Id.* at pp. 394–395.) A hearing officer took evidence on the appeal, but, before a decision was issued, Latham voluntarily retired. (*Id.* at p. 395.) The hearing officer subsequently issued a report concluding that discharge was not appropriate discipline, and the commission largely adopted the report. (*Ibid.*) The department of health services then filed a petition for writ of administra-tive mandate seeking an order vacating the commission's decision and dismissing Latham's appeal on the ground that her retirement divested the commission of jurisdiction to render a decision. (*Id.* at p. 396.) The trial court granted the petition. (*Ibid.*)

The appellate court agreed with the department's position and af-firmed the grant of the petition. (*County of Los Angeles, supra,* 180 Cal.App.4th at pp. 401–402.) The court reasoned: "*Zuniga* stands for the bright-line proposition that, where an employee retires during the pendency of a civil service appeal, her future status as an employee by definition is no longer at issue. The then pending appeal becomes a 'wage claim brought by a former civil servant,' and under *Zuniga* the Commission has no jurisdiction over such a wage claim because neither the charter nor Civil Service Rules vest such jurisdiction. [Citation.] In short, the Commission has authority to address only matters involving a member of the civil service, and a person who has retired is no longer a member of the civil service." (*County of Los Angeles, supra,* 180 Cal.App.4th at p. 401.)

In the present case, the City asks us to apply the holding of *County of Los Angeles* to conclude that Hall-Villareal's request for retirement benefits divested the CSB of jurisdiction to hear her appeal on the termination decision. We decline to do so. First, in our reading of *Zuniga,* we do not see a bright-line rule that, if a person whose employment already has been terminated seeks retirement benefits, the Civil Service Commission thereby loses jurisdiction to hear her appeal of the termination decision. In *Zuniga,* the employee was still employed when he appealed his suspension to the commission, and it

was his act of voluntarily resigning that withdrew the commission's jurisdiction. Where a former employee has been terminated, seeking retirement benefits would not result in a voluntary resignation from employment—the former employee has already been separated from employment.

Second, there may be some basis in the specific language of the Los Angeles County civil service rules for the holding in *County of Los Angeles*, but the City has not demonstrated that the Charter or municipal rules require the same result. As Hall-Villareal points out, the FMC contemplates that a person may leave City of Fresno employment, receive retirement benefits, and later return to work with the City; FMC section 3-543 specifically provides a procedure for "re-employment of retired persons." Consequently, Hall-Villareal's receiving retirement benefits would not preclude her from returning to her job if she were successful in her appeal of the termination decision. We conclude that Hall-Villareal's applying for retirement benefits did not divest the CSB of jurisdiction to hear her appeal.

■ The City further argues that, as of the moment she was served the order of termination, "Ms. Hall-Villareal became a former employee, with no rights to appeal under the express terms of the Fresno Municipal Code." This argument is clearly incorrect. As a "person so served" with an order of removal, Hall-Villareal was allowed to file with the CSB "a demand for an appeal hearing." (FMC § 3-282, subd. (b).) The CSB, as discussed above, is empowered under the city charter to conduct hearings on the "removal of any person in the City employment . . . ." (Charter, art. IX, § 909, subd. (c).) Consequently, the CSB had jurisdiction to hear Hall-Villareal's appeal after she was served the order of termination.

## II. *Good-cause exception for late filing*

The City next argues that the CSB lacked authority to hear Hall-Villareal's appeal because it was untimely. The City does *not* argue that Hall-Villareal failed to establish good cause for filing her appeal one day late in her particular situation. Rather, it argues that there is no exception in the procedural rules allowing for filing a late administrative appeal on a showing of good cause. We reject this argument.

■ It is true, as the City notes, that the FMC does not expressly provide a good cause exception for late-filed appeals. We observe, however, that the Charter does allow a removed employee "a *reasonable time* for answering [an order of removal]" (Charter, art. X, § 1002, italics added), and "reasonableness" may imply that untimely appeals must be accepted on a showing of good cause for the lateness.

■ More to the point, due process concerns require that a good cause exception be read into the administrative procedures where, as here, the fundamental vested right to continued employment is at issue. "Even where late filing of appeals from administrative decisions is not expressly permitted by regulation or statute, discretionary extensions of time for appeal for good cause are required where the employee has a fundamental and vested right of employment." (*Civil Service Com. v. Velez* (1993) 14 Cal.App.4th 115, 121 [17 Cal.Rptr.2d 490]; see also *Gonzales v. State Personnel Bd.* (1977) 76 Cal.App.3d 364, 367 [142 Cal.Rptr. 787] [where appeal of termination decision was six days late, "reasonable reconciliation between the rights of the employee and the employer requires that, where good cause is shown for a brief delay and no prejudice to the employer is shown, relief from the default should be given"]; *Faulkner v. Public Employees' Retirement System* (1975) 47 Cal.App.3d 731, 736 [121 Cal.Rptr. 190] [absence of specific provision for filing late appeal for good cause shown did not preclude the filing of such an appeal]; *Gibson v. Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494, 496–497 [108 Cal.Rptr. 1, 509 P.2d 945] [rejecting Unemployment Insurance Appeals Board's interpretation of statute that no error of counsel could constitute good cause for late filing].)

The City's attempt to distinguish the established case law is unavailing. Contrary to the City's claim, the cases requiring a good cause exception to administrative appeal time limits do not all rely on related statutory provisions with good cause exceptions. In *Gonzales v. State Personnel Bd., supra,* 76 Cal.App.3d 364, for example, there was no mention of related statutes. A good cause exception was required because the case dealt with the fundamental vested right to continued employment, not because of the specific language of the statute or related statutes. (*Id.* at p. 367.) Likewise in this case, we conclude there must be a good cause exception for filing a late appeal with the CSB because a fundamental vested right is at issue.

■ The City argues, in the alternative, that even if there is a good cause exception for late filing, Hall-Villareal cannot claim good cause. The City, however, does not argue that Hall-Villareal's circumstance did not constitute good cause. It argues that she cannot claim a good cause exception because she sought retirement benefits. For the reasons discussed above, we reject this argument. Seeking retirement benefits after being fired does not cut off a person's right to appeal.

The trial court granted Hall-Villareal's petition and ordered the City to conduct a hearing on the merits of the termination decision. There is no statement of the court's decision in the record. We presume, therefore, that

the court found good cause for Hall-Villareal filing her appeal one day late. (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267 [88 Cal.Rptr.3d 186] [under doctrine of implied findings, "in the absence of a statement of decision, an appellate court will presume that the trial court made all factual findings necessary to support the judgment for which substantial evidence exists in the record" (fn. omitted)].) Several facts in the record support a good-cause finding: Hall-Villareal first attempted to pursue her appeal rights through the Fresno City Employees Association, but the association was unresponsive; the attorney she next turned to canceled an appointment the day the appeal was due; her appeal was only one day late; and the City has never claimed any prejudice from her late filing. We conclude there was substantial evidence in support of the implicit good cause finding.

III. *Attorney's fees*

In her response brief, Hall-Villareal requests attorney's fees pursuant to Government Code section 800. She requested attorney's fees below, but the trial court denied her request, ordering that the parties bear their own costs and fees. Since Hall-Villareal did not cross-appeal, we do not reconsider her request for attorney's fees incurred at the trial court level. (*Johnston v. Department of Personnel Administration* (1987) 191 Cal.App.3d 1218, 1227, fn. 6 [236 Cal.Rptr. 853].)

With respect to attorney's fees incurred on appeal, we deny the request.[2] Government Code section 800, subdivision (a), provides in part: "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding . . . if it is shown that the award, finding, or other determination of the proceeding was the result of arbitrary or capricious action or conduct . . . , the complainant if he or she prevails in the civil action may collect from the public entity reasonable attorney's fees . . . ."

 "The phrase 'arbitrary or capricious' encompasses conduct not supported by a fair or substantial reason [citation], a stubborn insistence on following unauthorized conduct [citation], or a bad faith legal dispute [citation]." (*Kreutzer v. County of San Diego* (1984) 153 Cal.App.3d 62, 78 [200 Cal.Rptr. 322].) Here, we do not find that the City's reliance on *County of Los Angeles, supra,* 180 Cal.App.4th 391, and *Zuniga, supra,* 137 Cal.App.4th 1255, was made in bad faith. As a result, we decline to award attorney's fees under Government Code section 800.

---

[2] Although we agree with the City that Hall-Villareal has not made a proper motion under California Rules of Court, rule 3.1702(c)(1), we address the fee request in the interests of efficiency.

## *DISPOSITION*

The judgment is affirmed. Costs are awarded to Hall-Villareal.

Hill, P. J., and Detjen, J., concurred.

A petition for a rehearing was denied June 27, 2011.